IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CINDY M. ARNOLD                                                                     PLAINTIFF

v.                              CIVIL NO. 5:08-CV-05219

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

Plaintiff Cindy Arnold brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act).

**Procedural Background:**

Plaintiff protectively filed her application for Supplemental Security Income under Title XVI of the Social Security Act on November 24, 2004. (Tr. 121-122). Plaintiff's application was denied initially and at reconsideration. (Tr.93-95, 100-103). Pursuant to Plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on October 4, 2007, at which Plaintiff, represented by counsel, appeared and testified. (Tr. 52-90).

By written decision dated February 21, 2008, (Tr. 14-19) the ALJ found that the Plaintiff had not engaged in substantial gainful activity and that the medical evidence established that the Plaintiff had a severe combination of vision problems, arthritis and depression, but that she had no

impairment or combination thereof which met or equaled a listing in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). The ALJ further found that the Plaintiff was credible only to the extent her allegations were consistent with the residual functional capacity (RFC) set forth and that she had the residual functional capacity to perform the exertional requirements of light work. (Tr. 19). The ALJ found that although the Plaintiff's additional non-exertional limitations did not allow her to perform the full range of light work, there were a significant number of jobs in the national economy which she could perform despite the limitation, such as those specified by the Vocational Expert **(VE)**- hand packer and poultry production worker. (Tr. 19). In conclusion, the ALJ found that the Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision. (Tr. 19).

Plaintiff appealed the decision of the ALJ to the Appeals Council (Tr. 430-431). The Appeals Council denied Plaintiff's request for review on July 23, 2008, thereby making the ALJ's decision the final decision. (Tr. 5-7). Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. #4, 8-9).

**Evidence Presented:**

At the time of the administrative hearing on October 4, 2007, Plaintiff was forty-seven years of age and dropped out of school 3 months before completing the 12th grade. (Tr. 58). The ALJ concluded that Plaintiff had no past relevant work (Tr. 19, 192-198). Plaintiff testified that her body and eyes "basically her eyes" are what prevented her from working. (Tr. 68). Plaintiff testified that she was diagnosed with three bulging discs, two herniated and two cysts in her hip and a "colon shutdown" (Tr. 69) and that she could not stand or sit longer than 15 or 20 minutes. (Tr. 68).

Plaintiff stated that Dr. Webb and Dr. Conover prescribed a cane for her to use to help her get around. (Tr. 70).   In response to how her back problems occurred, Plaintiff testified that she was abused as a child and in a marriage for 10 years and that she has been in about two car accidents. (Tr. 71). She said that she was unable to lift a gallon of milk. (Tr. 71). Plaintiff testified that the light caused headaches and that at home she stays in a darkened room (Tr. 71-72). Plaintiff testified that she does not own a car and that she personally decided not to obtain a driver's license because she would hurt somebody or herself. (Tr. 63, 72). Plaintiff stated that she listens to television, can not do a pushing and pulling motion, smokes three or four cigarettes a day, can not sleep through the night because of pain, and only cooks dinners once in a while that do not require a recipe. (Tr. 72-75). At the time of the hearing, Plaintiff was taking several medications, some of which are free (Tr. 67-68).  Plaintiff was being seen medically at the "free clinic" (St. Francis Clinic) and was then seeing a doctor about every three weeks for her "colon shutdown."  (Tr. 65).  A friend or church people take her to the doctor. (Tr. 65). Plaintiff also goes to Ozark Guidance about once a month (Tr. 66) because she is depressed and has anxiety. (Tr. 76).

      Ms. Patty Kent, a vocational expert (VE), when presented with a hypothetical question by the ALJ, was asked to assume Plaintiff had demonstrated an ability to perform work within the light exertional level, with no climbing of scaffolds, ladders, or ropes, only occasional climbing of ramps and stairs, stooping, bending, crouching, crawling, kneeling, and balancing. (Tr. 85). The ALJ also asked the VE to consider limited vision, telling her that there should be no requirements of doing work with fine acuity such as threading a needle, picking up tiny little pens, and not driving as part of the work responsibilities. (Tr. 85-86). The VE testified that a person with these limitations could do cashier work. (Tr. 86). However, when the ALJ added to the hypothetical that the individual

should have no more than superficial contact incidental to work with the public and co-workers, that the work should be non-complex, simple instructions, little judgment, the type of work which is routine and repetitive where one could learn by rote with few variables and the supervision concrete, direct, and specific, the VE testified that hand packaging and poultry production type work- deboner, eviscerator- could be performed. (Tr. 86-87). Finally, the ALJ added to the hypothetical that due to fatigue, pain, side effects of medication, perhaps even lack of restorative sleep, or any other reason, the individual would miss work up to "two times a month". In response, the VE testified that she did not think a person could keep a job missing "consistently two times a week." (Tr. 88).[1] Nor did the VE believe that a person could keep unskilled work if that person needed extra breaks that added up to an hour a day. (Tr. 88).

**Medical Evidence**

The record reflects that upon eye examination in 2004 at Boozman-Hof Regional Eye Clinic, Plaintiff was diagnosed with ERM (Epiretinal Membrane Removal) (Tr. 214, 219). Those same records also reflect "unexplained VA loss". (Tr. 220). Plaintiff was also given an eye examination at the Jeffries Eye Clinic on 8/31/04, where she was diagnosed with probable rod-cone dystrophy and unexplained vision loss. (Tr. 207-208). On June 6, 2005, Dr. E. Mitchell Singleton at The Eye Center examined Plaintiff's eyes and concluded that "her uncorrected vision is 20/200+1 on the right and count fingers on the left. Her manifest refraction is -1.00-2.00 x100 equals 20/70+2, left eye- 0.75-2.00x080 equals 20/400. With +2.00 add, she is able to read 20/40 print at near. This is by my

---

[1] It appears that the VE's conclusions may have been based upon a person missing work two times "a week" rather than two times "a month." It is unclear from the transcript if this was clarified, since the VE's subsequent answer was inaudible. The ALJ should address this discrepancy when this case is remanded.

Certified Ophthalmic Technician with 25 years experience. I put the manifest refraction in a trial frame and the patient read 20/40-2 using both eyes for me." (Tr. 236). Dr. Singleton found that the dilated fundus exam showed "modest nuclear sclerosis consistent with 20/25 vision." (Tr. 236). Dr. Singleton further indicated that he was unable to find a neuroophthalmologic abnormality to explain her decreased vision on the left and noted that there was considerable variation in her response to visual acuity examination. (Tr. 237). He had some concerns about her reliability and did not have a sufficient explanation for her vision problem. Specifically, he found no reason for the glare in terms of abnormalities of the cornea, the lens or the vitreous, as one might expect with microcrystalline deposits, posterior subcapsular cataracts or asteroid hyalosis. (Tr. 237).

The Agency requested a disability determination evaluation on Plaintiff from Dr. Ken Kilgore, an opthamologist at the Kilgore Vision Center and in response thereto, Dr. Kilgore wrote a letter dated February 28, 2006 to the Disability Determination for Social Security Administration. (Tr. 326). In the letter, Dr. Kilgore stated that Plaintiff has been seen by other doctors for her eye problems over the last several years and that he was able to review some of those notes. He noted that there did seem to be a "downward trend in her vision at various times and at various doctor's examinations during the past several months. She was seen by different doctors ranging in the 20/60 to the 20/200 range until recently." (Tr. 326). More importantly, Dr. Kilgore stated that Plaintiff was advised to undergo ERG testing by another doctor during the past year to delineate the source of her visual deficit, but that unfortunately, Plaintiff "said she could not afford to drive to Little Rock to have this done. She does state she has lost so much vision that she no longer drives an automobile and tells me that she currently has no driver's license." (Tr. 326). Dr. Kilgore examined Plaintiff and concluded that her visual complaints and the results of the subjective portion of her eye

5

examination seemed inconsistent with the objective portion of her test. She claimed to be unable to count fingers or read any of the letters on the eye testing chart but stated she could detect hand motion, OU. "Interestingly, she was able to reach and see to recognize and grasp her eyeglasses when I handed them to her. At times, she was able to make central fixating eye contact throughout the interview although much of the time she did appear to have a lack of fixation. Most importantly, her pupils were normal in reaction and she had a normal appearing slit lamp and fundus examination." (Tr. 327). Although Dr. Kilgore noted these inconsistencies, leading him to invalidate her subjective portions of the eye exam, he nevertheless felt that she would be an excellent candidate for quantitation of her visual deficit with ERG and/or VEP testing. Dr. Kilgore concluded that the best place for this would be at the neuro-ophthalmologist Andrew Lawton's office in Little Rock, Arkansas. (Tr. 327). Dr. Kilgore further concluded that "the quantitation of her visual deficits is impossible by this examination" and hoped that further testing would assist the Agency in delineating the exact level of her disability. (Tr. 327).

Dr. Robert M. Redd, an non-examining consultant, completed a Physical Residual Functional Capacity Assessment dated 6/15/05, and diagnosed Plaintiff with low vision, but because she was able to read 20/25, he found there was "No occular pathology severe enough to cause a significant impairment per OpthCE." (Tr. 246). It was this same report, however, which indicated that the Plaintiff had no visual problems, which tends to discredit Dr. Redd's conclusions.

In 2006, the Plaintiff was also diagnosed with Hepatitis C by Dr. Sanjeeb Shrestha (Tr. 302), although no mention of this was made in the ALJ's opinion.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 416.920.

**Discussion:**

The ALJ has a duty to fully and fairly develop the record. It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC and to question a claimant in detail about her abilities. Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir.2000), we have also stated that a "claimant's residual functional capacity is a medical question," Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir.2001). "[S]ome medical evidence," Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace [.]" Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000). In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional. See 20 C.F.R. § 404.1545(c); cf.

Ford v. Secretary of Health and Human Services, 662 F.Supp. 954, 955-956 (W.D.Ark.1987) (RFC was "medical question," id. at 955, and medical evidence was required to establish how claimant's heart attacks affected his RFC, id. at 956) (cited with approval in Nevland, 204 F.3d at 858). Baldwin v. Barnhart, 349 F.3d 549, 556 (C.A.8 (Mo.),2003).  The ALJ's duty is to determine a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own description of his or her limitations. Eichelberger v. Barnhart, 390 F. 3d 584, 591 (8th Cir. 2004); Guilliams v. Barnhart, 393 F. 3d 798, 801 (8th Cir. 2005).

With respect to Plaintiff's vision problems, the Court is troubled by the fact that although Dr. Ken Kilgore stated that the quantitation of her visual deficits was impossible by his examination, thereby recommending that Plaintiff be examined by the neuro-ophthalmologist Andrew Lawton at his office in Little Rock, Arkansas, the ALJ nevertheless ignored the recommendation as well as Dr. Kilgore's observation that Plaintiff could not afford to go to Little Rock.  While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds. Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir. 1984); Jackson v. Bowen, 866 F. 2d 274, 275 (8th Cir. 1989).  It does not appear that the level of Plaintiff's visual impairment can be adequately considered without further testing by the recommended doctor in Little Rock, Arkansas, and there is no question that this would impact plaintiff's RFC.

The Court recognizes that the ALJ included in his hypothetical to the VE that there should be no requirements of doing work with fine acuity such as threading a needle, picking up tiny little pens, and no driving.   Based upon the ALJ's hypothetical, the VE opined that Plaintiff could perform

work as a hand packer or poultry production worker (deboner, eviscerator). However, in the Dictionary of Occupational Titles (D.O.T.), near acuity, depth perception and color vision are required occasionally by a hand packager. See <u>DICOT</u> § 920.587-018 at www.westlaw.com. With respect to a poultry eviscerator, the same dictionary requires near acuity constantly for a poultry eviscerator. See <u>DICOT</u> § 525.687-074 at www.westlaw.com. Since Dr. Kilgore indicated that it is impossible to quantify Plaintiff's visual deficit, the Court does not believe the ALJ had sufficient evidence to determine the extent of Plaintiff's visual acuity and that he could therefore not properly present an appropriate hypothetical to the VE.

Based upon the foregoing, and after reviewing the entire evidence of record, we find remand is necessary in order for the ALJ to more fully and fairly develop the record with regard to Plaintiff's visual capacity. On remand, the ALJ is directed to enable the Plaintiff to travel to Little Rock to be examined by neuro-opththalmologist Andrew Lawton, or another neuro-opththalmologist with similar credentials, and to request that the consultative examiner complete a RFC assessment regarding Plaintiff's visual capabilities during the time period in question. The ALJ is also directed to address and re-evaluate Plaintiff's allegations of fatigue in light of her 2006 Hepatitis C diagnosis. The ALJ should also clarify the discrepancy noted in the VE's testimony as referred to in footnote 1 above. With this evidence, the ALJ should then re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

**Conclusion:**

      Based on the foregoing, the undersigned reverses the decision of the ALJ and remands this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g). DATED this 20TH day of October, 2009.

                                         /s/ *Erin L. Setser*
                                         HON. ERIN L. SETSER
                                         UNITED STATES MAGISTRATE JUDGE

.